UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICKY L.,[1]

                                                  Plaintiff,                  Case # 20-CV-7102-FPG

v.                                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                  Defendant.
_____

## INTRODUCTION

Plaintiff Ricky L. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the reasons that follow, Plaintiff's motion, ECF No. 11, is DENIED, and the Commissioner's motion, ECF No. 12, is GRANTED.

## BACKGROUND

In January 2018, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 624. He alleged disability since November 2005 due to the following illnesses, injuries or conditions: deteriorated disc in lower back, deteriorated disc in neck, deteriorated disc in right shoulder, and arthritis in whole body. Tr. 625. In December 2019, Administrative Law Judge Paul Martin ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 13-28.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

1

On October 27, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2,

2018, the application date. Tr. 18. At step two, the ALJ found that Plaintiff had severe impairments of cervical and lumbar degenerative disc disease, as well as a shoulder injury, all status post surgery. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform light work with the following exertional limitations: a sit/stand option with lifting and carrying up to 15 pounds occasionally and 10 pounds frequently, sitting, standing and walking up to six hours per day, occasional pushing and pulling, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching with the right upper extremity. Tr. 18-22.

At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 22. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 22-23. The ALJ therefore found that Plaintiff is not disabled. Tr. 23.

**II.  Analysis**

Plaintiff argues that remand is warranted because the ALJ did not properly evaluate the medical opinion of Plaintiff's primary care physician, Dr. Bryan Sandler. *See* ECF No. 11-1 at 5, 11-17. More specifically, Plaintiff contends that the ALJ failed to properly address "the consistency and supportability factors," rendering the RFC, and ultimate disability determination, unsupported by substantial evidence. *Id.* at 11-17.

**A.  New Regulations Regarding Evaluation of Medical Opinion Evidence**

"The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded." *Raymond M. v. Commissioner*, No. 5:19-CV-1313 (ATB), 2021 WL

706645, at *4 (N.D.N.Y. Feb. 22, 2021). "According to the new regulations, the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *Id.* (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "Instead, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).

Under the new regulations, "the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1)). However, the new regulations "eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion." *Id.* Of the five factors the ALJ is to consider in evaluating the persuasiveness of medical opinions, consistency and supportability are "the most important." *Id.* (citing *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853).

"At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M.*, 2021 WL 706645, at *8 (citing *Jacqueline L. v. Commissioner*, No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. January 26, 2021)); *see also Janice P. v. Kijakazi*, No. 5:21-cv-55, 2022 WL 2251666, at *5 (D. Vt. April 22, 2022) ("The ALJ will articulate how he or she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the

5

same issue that differ slightly." (internal quotation marks omitted)); *Cuevas v. Commissioner*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) ("The new regulations controlling the ALJ's assessment of medical opinions now require an ALJ to explain how persuasive she found the medical opinions she considered, and specifically, how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole.").

The "supportability" factor of the new regulations "asks how well a medical source supported their opinion(s) 'with objective medical evidence' and 'supporting explanations.'" *Cuevas*, 2021 WL 363682, at *14 (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "The 'consistency' factor calls for a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

### B. The ALJ's Assessment of Opinion Evidence

Here, the ALJ did not explicitly discuss what Dr. Sandler "used to support [his] opinion[] and reach [his] ultimate conclusion[ ]." *See* Tr. 21-22; *Cuevas*, 2021 WL 363682, at *14. As a result, he "failed to apply . . . the supportability factor." *Id.* This amounts to legal error. *See id.* at *15 ("Because the ALJ failed to address the supportability factor . . . the ALJ committed legal error by failing to apply the proper legal standards in the form of the post-March 26, 2017 SSA regulations."); *cf. Jacqueline L.*, 2021 WL 243099, at *6 ("As required by the new regulations, the ALJ explained his findings regarding the supportability and consistency for each of the opinions, pointing to specific evidence in the record supporting those findings.").

Turning to the consistency factor, the ALJ's analysis is also wanting. The ALJ found Dr. Sandler's opinion to be "not persuasive because his answers are generally inconsistent with the

medical evidence of record" and "not entirely consistent with the objective medical evidence, including the lack of neurologic findings that would suggest failed surgeries."  Tr. 21-22.  Where an ALJ "merely states" that an examining physician's opinion is "not consistent with[ ] the overall medical evidence," he has failed to adequately explain his conclusions regarding the consistency factor. *See Raymond M.*, 2021 WL 706645, at *10.

Accordingly, the ALJ "committed procedural error by failing to explain how [he] considered the supportability and consistency of [Dr. Sandler's] medical opinion[]."  *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order).

### C. Whether the ALJ's Procedural Error was Harmless

Notwithstanding the ALJ's procedural error under the new regulations, this Court may affirm the ALJ's decision if "a searching review of the record assures [it] that the substance of the regulation was not traversed."  *Id.* (citation & internal quotation marks omitted); *see also Janice P.*, 2022 WL 2251666, at *5.

Here, the Court finds that the ALJ's procedural error was harmless.  Dr. Sandler, a family practitioner with a 4-year treatment relationship with Plaintiff, opined, *inter alia*, that Plaintiff: (1) would frequently experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks during the course of a typical workday; (2) could remain sitting for "0" minutes at one time "before needing to get up, etc."; (3) could remain standing for "0" minutes at one time "before needing to sit down, walk around, etc."; and (4) could sit for less than two hours total in an eight-hour workday and could stand/walk for less than two hour total in an eight-hour workday.  Tr. 1498-1500.  However, somewhat inconsistently, Dr. Sandler also opined that Plaintiff did not require a cane or other assistive device and would "[n]ever" be absent from work as a result of his impairments or treatments.  Tr. 1499-1500.

In crafting the RFC, the ALJ considered the medical opinions of consultative examiners Drs. Seok and Chu, finding them persuasive because they were supported by specific portions of the objective medical evidence and consistent with medical treatment records and objective medical documentation. Tr. 21. The ALJ reasoned that Dr. Seok's and Dr. Chu's respective opinions that Plaintiff (1) had only a mild restriction for prolonged standing and walking and (2) could perform light work with postural activity limitations, were consistent with the treatment notes and records which showed that Plaintiff's lower extremities had intact reflexes, normal sensation, full strength, and a normal gait. Tr. 20 (citing Tr. 1074, 1077); Tr. 21 (citing 1194). In addition, the ALJ reasoned that, notwithstanding the fact that Plaintiff had a "relatively long treating relationship" with Dr. Sandler, Dr. Sandler's opinion was not as consistent with the objective medical evidence as that of Drs. Seok and Chu. *See* Tr. 22.

Based on this reasoning, it is clear from his decision that the ALJ considered the supportability and consistency of Dr. Sandler's opinion in the context of the other opinion evidence and the medical records and treatment notes. Thus, insofar as the Court can adequately "glean" how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion, *Brenda W. v. Comm'r of Soc. Sec*, No. 20-CV-1056, 2022 WL 446462, at *5 n.5 (W.D.N.Y. Feb. 14, 2022), the Court finds the ALJ's procedural error harmless as "the substance of the [regulation] was not traversed." *See Loucks*, 2022 WL 218293, at *2.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. The Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 27, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York